UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| | CASE NO.: 09-00596-B |
| Theresa Kay Pitts, | |
| | NOTICE OF MOTION SEEKING |
| Debtor(s). | 11 U.S.C. §362(d) RELIEF |

311596-00584

TO:    DEBTOR, DEBTOR'S ATTORNEY, TRUSTEE, AND THOSE NAMED IN THE ATTACHED MOTION

PLEASE TAKE NOTICE THAT ON **December 1, 2011 at 10:00 a.m.** at the Donald Stuart Russell Federal Courthouse, 201 Magnolia Street, Spartanburg, SC, a hearing will be held on the attached Motion.

Within fourteen (14) days after service of the attached Motion, and the Notice of Motion, the Movant's Certification of Facts, (and a blank Certification of Facts form, applicable only to motions for relief from the automatic stay and for service on *pro se* parties only), any party objecting to the relief sought shall:

1)    File with the Clerk of this Court a written objection to the 11 U.S.C § 362 Motion;

2)    File with the Clerk of this Court a Certification of Facts (for motions for relief from the automatic stay;

3)    Serve on the movant items 1 & 2 above at the address shown below; and

4)    File a certificate of such service with the Court.

If you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the Court.

| | |
|---|---|
| DATE OF ISSUANCE: | October 28, 2011 |
| MOVANT: | JPMorgan Chase Bank, National Association, successor by interest to Washington Mutual Bank f/k/a as Long Beach Mortgage Company |
| ATTORNEY: | Samuel C. Waters, ID #4539<br>Cheryl H. Fisher, ID #7451<br>Reginald P. Corley, ID #7832<br>Jennifer W. Rubin, ID #7540<br>Mary R. Powers (I.D. 9121)<br>William S. Koehler (I.D. 9912) |
| ATTORNEY'S ADDRESS: | P.O. Box 100200<br>Columbia, SC  29202<br>(803) 744-4444 |

TO:    PARTY FILING MOTION FOR RELIEF FROM AUTOMATIC STAY (11 U.S.C. §362)

Please refer to Federal Rules of Bankruptcy Procedure 4001(a) for specifics of your responsibilities for service and filing of documents, including the above notice of hearing, related to your motion for relief from the automatic stay (11 U.S.C. §362).

Please note that Local Rule 4001 provides for any party failing to comply with the procedures specified in the rule to be denied the opportunity to appear and be heard before the court and to the subject to sanctions pursuant to Local Rule 9011.

UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| Theresa Kay Pitts, | CASE NO.: 09-00596-B |
| Debtor(s). | MOTION TO MODIFY STAY |

311596-00584

JPMorgan Chase Bank, National Association, successor by interest to Washington Mutual Bank f/k/a as Long Beach Mortgage Company ("Movant") moves the Court pursuant to 11 U.S.C. 362(d) for relief from the automatic stay provided by 362(a) of the United States Bankruptcy Code and represents as follows:

1.      Debtor filed a Petition for Relief under Chapter 13 of the United States Bankruptcy Code on January 28, 2009.

2.      The Trustee of the Debtor's estate may claim an interest in the property which is the subject of this action.

3.      A Proof of Claim was duly filed and is of record herein.

4.      Post-petition payments have not been made pursuant to the terms of the note, mortgage and chapter 13 plan, resulting in a total post-petition amount due of $7,365.67 as of October 28, 2011. This delinquency results in debtor's being due for the March 1, 2011 payment forward.

5.      Movant has a valid security interest in the property described in that certain mortgage dated May 26, 2005 and recorded June 2, 2005, in the office of the RMC/ROD for Spartanburg County in Book 3452 at Page 125 in the original principal sum of $104,000.00.  A copy of the Debtor's note and mortgage is attached.

6.      The interest of Movant with respect to the mortgaged premises continues to worsen and is not adequately protected while a large indebtedness remains upon this account.

7.      According to the Note and Mortgage Movant's attorney is entitled to a reasonable fee and reimbursement of costs for the prosecution of this action.

8.       The automatic stay heretofore entered should be modified to the extent necessary to

allow Movant to foreclose the mortgage on the said real property.

9.      FRBP 4001 (a)(3) should not apply under these circumstances.

10.      The Movant agrees to waive any claim that may arise under 11 U.S.C. Section 503(b) or Section 507(b) as a result of this Motion.  The Movant further agrees that any funds realized from the foreclosure sale, in excess of all liens, costs, and expenses, will be paid to the trustee.

WHEREFORE, Movant prays:

1.      The stay pursuant to 11 U.S.C. 362(d) be modified to permit Movant to pursue any state court remedies under its mortgage on the above-mentioned property, including sending any required notice;

2.      The Court order that FRBP 4001 (a)(3) does not apply to the relief requested by the Movant;

3.      The attorney's fees and costs in the amount of $650.00 or such additional amounts as the Court finds reasonable be granted; and

4.      The Court orders such other relief as may be just and proper.

/s/ William S. Koehler
Samuel C. Waters (I.D. 4539)
Cheryl H. Fisher (I.D. 7451)
Reginald P. Corley (I.D. 7832)
Jennifer W. Rubin (I.D. 7540)
Mary R. Powers (I.D. 9121)
William S. Koehler (I.D. 9912)
Attorneys for Movant
Rogers Townsend & Thomas, PC
220 Executive Center Drive, Suite 109 (29210)
Post Office Box 100200
Columbia, South Carolina 29202
(803) 744-4444

Columbia, South Carolina
October 28, 2011

UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF SOUTH CAROLINA

IN RE:

Theresa Kay Pitts,

           Debtor(s).

CHAPTER 13
CASE NO.: 09-00596-B

CERTIFICATION OF FACTS

311596-00584

  In the above-entitled proceeding, in which relief is sought by JPMorgan Chase Bank, National Association, successor by interest to Washington Mutual Bank f/k/a as Long Beach Mortgage Company from the automatic stay in accordance with 11 U.S.C Section 362, I do hereby certify to the best of my knowledge the following:

1. Nature of Movant's Interest:
  Secured.

2. Brief Description of Security Interest, copy attached (if applicable):
  Note and Mortgage.

3. Description of Property Encumbered by Stay (Include serial number, lot and block number, etc.):
  236 Gordon Drive, Spartanburg in Spartanburg County, South Carolina - TM&# 6-21-06-118.00

4. Basis for Relief (property not necessary for reorganization, debtor has no equity, property not property of estate, etc.; include applicable subsection of Section 362):
  11 U.S.C. §362(d)1 and (d)2

5. Prior Adjudication of Other Courts, copy attached, (Decree of foreclosure, Order of possession, Levy of execution, etc., if applicable):
  N/A

6. Valuation of Property, copy of valuation attached (Appraisal, Blue Book, etc.):

| | | |
|---|---|---|
| Fair Market Value | $88,000.00 | Movant reserves the right to provide an appraisal if needed |
| Liens (Mortgages) | $136,781.72 | Payoff as of 10/28/11 |
| Other: | $0.00 | |
| Debtor Exemption (-) | $0.00 | |
| Net Equity | $0.00 | |
| Source/Basis of Value | Debtor's Schedules | |

If Appraisal:
Date of Appraisal  _____
Type of Appraisal  _____
Name of Appraiser  _____
Address of Appraiser _____

7. Amount of debtor's estimated equity (using figures from paragraph 6, supra):
  $0.00

8. Month and Year in Which First Direct Post-petition Payment Came Due to Movant (if applicable).
  N/A – Loan modified effective 9/1/10

  (a) For Movant/Lienholder (if applicable): List or attach a list of all post-petition payments received directly from debtor(s), clearly showing date received, amount, and month and year for which each such payment was applied.
  See attached payment history.

  (b) For Objecting Party (if applicable): List or attach a list of all post-petition payments included in the Movant's list from (a) above which objecting party disputes as having been made.  Attach written proof of such payment(s) or a statement as to why such proof is not available at the time of filing this objection.

9. Month and Year for Which Post-petition Account of Debtor(s) is Due as of the Date of this Motion:
  March 1, 2011.

         /s/ William S. Koehler
         Samuel C. Waters, ID #4539
         Cheryl H. Fisher, ID #7451
         Reginald P. Corley, ID #7832
         Jennifer W. Rubin, ID #7540
         Mary R. Powers (I.D. 9121)
         William S. Koehler (I.D. 9912)
         Attorney for Movant
         Post Office Box 100200
         Columbia, SC  29202-3200
         (803) 744-4444

Dated: October 28, 2011

UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF SOUTH CAROLINA

IN RE:

Theresa Kay Pitts,

Debtor(s).

311596-00584

CHAPTER 13
CASE NO.: 09-00596-B

CERTIFICATE OF SERVICE

I, the undersigned employee of ROGERS TOWNSEND & THOMAS, PC, do hereby

certify that a copy of the Notice of Motion Seeking Relief, Motion to Modify Stay and

Certification of Facts were mailed to the parties listed below:

Theresa Kay Pitts
236 Gordon Drive
Spartanburg, SC  29301

Däna Elizabeth Wilkinson, Esquire
365-C East Blackstock Road
Spartanburg, SC  29301

Gretchen D. Holland (via electronic service)
Chapter 13 Trustee
3 Caledon Court, Suite 3A
Greenville, SC 29615

/s/ Rosa Smart
ROGERS TOWNSEND & THOMAS, PC
Rosa Smart, Bankruptcy Paralegal
Post Office Box 100200
Columbia, SC  29202-3200
(803) 744-4444

Columbia, South Carolina
October 28, 2011

Post-Petition Payment History Ledger

| Debtor(s) | Pitts | | | Resumption Date | | Loan Modified effective 9/1/10 |
|---|---|---|---|---|---|---|
| Loan No.: | XXXXXX5940 | | | Due Date | | March 1, 2011 |

| Date Rcv'd | Amount Paid | Payment Amt | Applied To | Suspense | Suspense Running Balance | Late Charges | Advances | Comments |
|---|---|---|---|---|---|---|---|---|
| | $ 1,814.14 | $ - | | $ 1,814.14 | $ 1,814.14 | | | Balance left after all applied for loan mod |
| Oct-19-10 | $ 994.14 | $ 978.28 | 9/1/2010 | $ 15.86 | $ 1,830.00 | $ - | $ - | |
| Nov-18-10 | $ 994.14 | $ 978.28 | 10/1/2010 | $ 15.86 | $ 1,845.86 | $ - | $ - | |
| Dec-28-10 | $ 994.14 | $ 978.28 | 11/1/2010 | $ 15.86 | $ 1,861.72 | $ - | $ - | |
| Dec-29-10 | $ 533.93 | $ 978.28 | 12/1/2010 | $ (444.35) | $ 1,417.37 | $ - | $ - | |
| Mar-10-11 | $ 994.14 | $ 978.28 | 1/1/2011 | $ 15.86 | $ 1,433.23 | $ - | $ - | |
| Apr-13-11 | $ 115.00 | $ 978.28 | 2/1/2011 | $ (863.28) | $ 569.95 | | | |

| Date Rcv'd | Amount Paid | Payment Amt | Due Date | Suspense | Suspense Running Balance | Late Charges | Advances | Comments |
|---|---|---|---|---|---|---|---|---|
| | $ - | $ 978.28 | 3/1/2011 | $ - | $ - | $ - | $ - | |
| | $ - | $ 978.28 | 4/1/2011 | $ - | $ - | $ - | $ - | |
| | $ - | $ 996.51 | 5/1/2011 | $ - | $ - | $ - | $ - | |
| | $ - | $ 996.51 | 6/1/2011 | $ - | $ - | $ - | $ - | |
| | $ - | $ 996.51 | 7/1/2011 | $ - | $ - | $ - | $ - | |
| | $ - | $ 996.51 | 8/1/2011 | $ - | $ - | $ - | $ - | |
| | $ - | $ 996.51 | 9/1/2011 | $ - | $ - | $ - | $ - | |
| | $ - | $ 996.51 | 10/1/2011 | $ - | $ - | $ - | $ - | |
| | | | | | | | | |
| | $ 6,439.63 | $ 13,805.30 | | $ 569.95 | | $ - | | |
| Outstanding Debt | | | | | | | $ - | $ 7,365.67 |

FIXED/ADJUSTABLE RATE NOTE
(LIBOR Index — Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

May     26, 2005                    ANAHEIM                         CA
[Date]                               [City]                        [State]

236 GORDON DR
SPARTANBURG, SC  29301
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 104,000.00                  (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
**LONG BEACH MORTGAGE COMPANY**
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of     7.300   %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**
    (A) Time and Place of Payments
    I will pay principal and interest by making payments every month.
    I will make my payments on the first day of each month beginning on     July     1 , 2005
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
    June     1 , 2035    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at :   P.O. Box 2441, Chatsworth CA 91313-2441

or at a different place if required by the Note Holder.
    (B) Amount of My Initial Monthly Payments
    Each of my initial monthly payments will be in the amount of U.S. $     712.99                     . This amount may change.
    (C) Monthly Payment Changes
    Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    (A) Change Dates
    The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
    June     , 2007    , and on that day every     6th     month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."
    (B) The Index
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the London interbank offered rates for six month dollar deposits in the London market based on quotations at five major banks ("LIBOR"), as set forth in the "Money Rates" section of The Wall Street Journal, or if the Money Rates section ceases to be published or becomes unavailable for any reason, then as set forth in a comparable publication selected by the Lender. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
    (C) Calculation of Changes
    Before each Change Date, the Note Holder will calculate my new interest rate by adding     Four and Ninety
    Nine Hundredths                   percentage point(s) (     4.990      %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
    The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
    (D) Limits on Interest Rate Changes
    The interest rate I am required to pay at the first Change Date will not be greater than     9.300   % or less than
        7.300   %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than     One                   percentage points (    1.000  %)

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR

Page 1 of 3

4140265  (0111)                    VMP MORTGAGE FORMS - (800)521-7291

41402651 (01/25/02) LG

from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **13.300** %, which is called the "Maximum Rate" or less than **7.300** % which is called the "Minimum Rate".

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal before they are due.



When I make a full or partial prepayment, I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of     **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR**

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) Until my initial fixed rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument provides as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 17 of the Security Instrument shall instead provide as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

    To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Theresa Pitts_____ (Seal)          _____ (Seal)
**THERESA PITTS**                 -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                              -Borrower

[Sign Original Only]

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR

When recorded, mail to:

LONG BEACH MORTGAGE COMPANY
P.O. BOX 201085
STOCKTON, CA 95202



MTG-2005-27953
Recorded 10 Pages on 6/2/2005 10:33:01 AM
Recording Fee: $16.00 Documentary Stamps: $0.00
Office of Register of Deeds, Spartanburg, S.C.
Stephen Ford, Register

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on        May        26 ,   2005        . The mortgagor is
THERESA PITTS

("Borrower"). This Security Instrument is given to
LONG BEACH MORTGAGE COMPANY

which is organized and existing under the laws of   the State of Delaware                                    , and whose
address is        1400 S. DOUGLASS RD., SUITE 100, ANAHEIM, CA 92806
                                          ("Lender"). Borrower owes Lender the principal sum of
One Hundred Four Thousand and no/100-----------------------------------------------------------
                                          Dollars (U.S. $        104,000.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on    June        1 ,   2035        .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's
successors and assigns the following described property located in   SPARTANBURG                County, South Carolina:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of  236 GORDON DR                                SPARTANBURG        [Street, City],
South Carolina    29301                    [Zip Code]  ("Property Address");
**SOUTH CAROLINA**-Single Family
                                Page 1 of 6
**ELF** -4140139  (9504)        ELECTRONIC LASER FORMS, INC. - (800)327-0545        Initials
TDSC1 (04/02/04) PC

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures, rents and profits now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve


-4140139   (9504)
TM
TDSC3 (04/02/04) PC

Initials 

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

4140139  (9504)

Page 4 of 6

Initials: 

TDSC4 (04/02/04) PC

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Waivers.** Borrower waives all rights of homestead exemption in the Property.

**24. Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to one hundred fifty percent (150%) of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs.

**25. Lender in Possession.** Upon acceleration under paragraph 21 or abandonment of the Property, Lender (by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents and profits of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] VA Rider | [ ] Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_____ (Seal)
THERESA PITTS                                    -Borrower

_____
Witness

_____ (Seal)
                                                 -Borrower

_____
Witness

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

**STATE OF SOUTH CAROLINA,**                              County ss: Spartanburg
Before me personally appeared _Linda M. Gilbert_                          and made oath that
she saw the within named Borrower sign, seal, and as her act and deed, deliver the within written
Mortgage; and that she with David H. Hanna, Sr.
witnessed the execution thereof.                          Linda M. Gilbert

Sworn before me this 26th day of May, 2005.

My Commission Expires:
                                                 _____
(Seal)     6/22/14                               Notary Public for South Carolina
                                                              6-22-14

EXHIBIT 'A'

All that certain piece, parcel or lot of land situate, lying and being in the
State of South Carolina, County of Spartanburg and being more particularly
shown and designated as Lot No. 72 as shown on a survey for Colin C.
O'Brien dated January 16, 1995, prepared by Blackwood Associates, Inc.
recorded in Plat Book 128, Page 357 in the Office of the Register of Deeds
for Spartanburg County, South Carolina.  Reference to said plat is made for
a more detailed description.

This being the same property conveyed to Theresa Pitts by deed of Raymond
H. Beach and Amy B. Beach dated May 26, 2005, to be recorded herewith.

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made on this **26th** day of **May**,
**2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to :

### LONG BEACH MORTGAGE COMPANY

(the"Lender") of the same date and covering the property described in the Security Instrument and located at:

### 236 GORDON DR
### SPARTANBURG, SC 29301

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN THE BORROWER'S FIXED INTEREST RATE AND TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE BORROWER'S ADJUSTABLE RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of **7.300** %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 1. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (a) Change Dates

The initial fixed interest rate will change to an adjustable interest rate on the first day of **June**,
**2007**, and on the first day of the month every 6th month thereafter. Each date on which the adjustable interest rate could change is called a "Change Date."

### (b) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. The "Index" is the average of the London interbank offered rates for six month dollar deposits in the London market based on quotations at five major banks ("LIBOR"), as set forth in the "Money Rates" section of *The Wall Street Journal,* or if the Money Rates section ceases to be published or becomes unavailable for any reason, then as set forth in a comparable publication selected by the Lender. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

### (c) Calculation of Changes

Before each Change Date, the Lender will calculate my new interest rate by adding **Four and Ninety Nine Hundredths** percentage point(s) ( **4.990** %) to the Current Index. The Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 1(d) on the following page, this rounded amount will be the new interest rate until the next Change Date.

**Fixed/Adjustable Rate Rider - Libor**

-1956016   (9510)    ELECTRONIC LASER FORMS, INC. - (800)327-0545

19560161 (05/03/04) PC



The Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal balance as of the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the new monthly payment.

**(d) Limits on Interest Rate Changes**
The interest rate at the first Change Date will not be greater than **9.300** % or less than **7.300** %. Thereafter, the adjustable interest rate will never be increased or decreased on any single Change Date by more than **One** percentage points ( **1.000** %) from the rate of interest applicable during the preceding 6 months. The adjustable interest rate will never be greater than **13.300** %, which is called the "Maximum Rate" or less than **7.300** ' % which is called the "Minimum Rate".

**(e) Effective Date of Changes**
Each new adjustable interest rate will become effective on each Change Date. The amount of each new monthly payment will be due and payable on the first monthly payment date after the Change Date until the amount of the monthly payment changes again.

**(f) Notice of Changes**
The Lender will deliver or mail a notice of any changes in the adjustable interest rate and the amount of the new monthly payment to the Borrower before the effective date of any change. The notice will include information required by law to be given to the Borrower and also the title and telephone number of a person who will answer any questions regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 17 of the Security Instrument provides as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 17 of the Security Instrument contained in Section B(1) above shall then cease to be in effect, and Uniform Covenant 17 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if

**Fixed/Adjustable Rate Rider - Libor**



exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and  Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)                    _____ (Seal)
THERESA PITTS              -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                            -Borrower                                          -Borrower

[Sign Original Only]

**Fixed/Adjustable Rate Rider - Libor**

ELF-1956016   (9510)                    Page 3 of 3

19560163 (05/03/04) PC



# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):[1] **THERESA PITTS**
Lender or Servicer ("Lender"): **CHASE HOME FINANCE LLC**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **MAY 26, 2005**
Loan Number: **0695515940**
Property Address ("Property"): **236 GORDON DR, SPARTANBURG, SOUTH CAROLINA 29301**

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations.** I certify, represent to Lender and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

*Theresa Pitts*

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      ver. 05_05_2010_12_05_37      Form 3157      3/09 (rev. 2-23-10)**
(page 1 of 6 pages)

A. TIME IS OF THE ESSENCE under this Agreement. This means I must make all payments on or before the days that they are due;

B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

D. I understand and agree that if I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, I am voluntarily entering into this modification for the benefits to be obtained thereby and not as a reaffirmation of the debt evidenced by the Note, and I further understand and agree, and the Lender, by its execution of this Agreement also agrees, that nothing contained herein is intended to impose personal liability for the Loan in violation of such discharge.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **SEPTEMBER 01, 2010** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on **SEPTEMBER 01, 2010**.

A. The new Maturity Date will be: **JUNE 01, 2035**.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$130,746.14** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 5.675% will begin to accrue on the New Principal Balance as of **AUGUST 01, 2010** and the first new monthly payment on the New Principal Balance will be due on **SEPTEMBER 01, 2010**. My payment schedule for the modified loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins on | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-25 | 5.675% | 08/01/2010 | $819.11 | $159.17 May adjust periodically | $978.28 May adjust periodically | 09/01/2010 | 298 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan.   My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.      **Additional Agreements**. I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT      ver. 05_05_2010_12_05_37      Form 3157      3/09 (rev. 2-23-10)
(page 3 of 6 pages)

Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by

the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal Information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4. N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. If I receive a separate notice from Lender that I am required to attend additional debt management counseling, I agree to promptly attend such counseling and provide evidence of attendance to Lender upon request.

P. I acknowledge and agree that if the Lender executing this Agreement is not the current holder or owner of the Note and Mortgage, that such party is the authorized servicing agent for such holder or owner, or its successor in interest, and has full power and authority to bind itself and such holder and owner to the terms of this modification.

**JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** – Single Family – Fannie
**Mae/Freddie Mac  UNIFORM INSTRUMENT**      ver. 05_05_2010_12_05_37      **Form 3157**      3/09 (rev. 2-23-10)
(page 5 of 6 pages)

_____[Space Below This Line For Borrower Acknowledgement]_____

Borrower -   **THERESA PITTS**                                              Date: 5 / 14 / 10

_____[Space Below This Line For Corporate Acknowledgement]_____

**CHASE HOME FINANCE LLC**
Lender

By: _____

Date: _____

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac   UNIFORM INSTRUMENT     ver. 05_05_2010_12_05_37     Form 3157     3/09 (rev. 2-23-10)
(page 6 of 6 pages)